George E. SMITH and Lillian M. Smith,
Appellants,

v.

Henry F. RODICK, Vernon F. Rodick and
the National Engineering & Manufactur-
ing Company, a Corporation, Respondents.

No. 22298.

Kansas City Court of Appeals.

Missouri.

Jan. 9, 1956.

Henry G. Eager, Richard G. Poland, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, for appellants.

Walter R. Barnes, Wm. Dennis Bush, Kansas City, for respondents.

PER CURIAM.

This is an action for money had and received. Plaintiffs recovered a verdict and judgment for $1,550. Defendants were granted a new trial and plaintiffs have appealed.

In substance plaintiffs' petition alleged that they agreed to purchase and defendants agreed to sell for $6,200 certain steel forms

intended for use in the construction of concrete dwelling houses; that for the purchase price plaintiffs paid to defendants $1,550 in cash, and executed two promissory notes payable to defendants, the face amount of one note being $4,696.50, the other $827.75; that defendants failed and refused to manufacture and deliver said steel forms; and that defendants have been benefited in the amount of $1,550, which sum belongs to plaintiffs and by law should be refunded to them.

Defendants' answer admitted that defendants sold to plaintiffs the materials mentioned in plaintiffs' petition and that plaintiffs paid to them the sum of $1,550 and executed the notes above described. The answer then alleged that "said steel forms sold to plaintiffs, were practical and feasible for use in building concrete dwelling houses."

Coupled with defendants' answer were three counterclaims. The first was based upon the note for $4,696.50, and defendants sought judgment for the face amount thereof plus interest and other charges, or a total of $5,369.81. The second was based upon the note for $827.75, and defendants asked judgment for $1,208.52. The third alleged that, at plaintiffs' request, defendants loaned to plaintiffs the sum of $410.94, which sum was never repaid by plaintiffs and, together with interest thereon, amounted to $593.81.

The trial of the case began on Monday, October 18, 1954, before Judge John F. Cook and a jury. On the following Thursday at 2:20 p. m. both parties rested. The jury was instructed and the case argued later that afternoon, but not submitted.

Among the instructions given only Number 1 directed a verdict for plaintiffs. Numbers V and VII, which were on the first two counterclaims, both required that the jury must "first find against the plaintiffs on Instruction No. 1." Instruction No. 1 itself required jury findings in the conjunctive that among other things "the Smiths paid $1,550.00 to the Rodicks as a part of the purchase price, if so," that the Rodicks thereafter failed to perform the agreement and that plaintiffs elected to re-

scind and "asked for their money back." After these findings the jury was then told in this same instruction that: " * * * if so, then your verdict should be in favor of the plaintiffs on their petition and against all three of the defendants * * * in the principal amount of $1,550.00 and you may allow interest thereon * * *."

Instructions Number II and III submitted plaintiffs' defenses of failure of consideration upon the notes and Number VII given on behalf of defendants directed a verdict on one of the counterclaims, saying: " * * it is admitted that plaintiffs did on October 4, 1946, pay to defendants a down payment of $500.00, in cash, and that a second down payment was paid to the defendants by the plaintiffs on October 18, 1946, in the amount of $1,050.00, in cash, leaving a balance on the purchase price of $4,650.00."

Before Thursday's adjournment at 4:38 p. m. Judge Cook announced to counsel and the jury that on the next day he would leave the city, but that he would ask Judge Duvual P. Strother to continue with the case. At 9:30 a. m. on Friday, October 22, 1954, with Judge Strother presiding the jury retired. At 12:38 p. m. a verdict signed by nine jurors was returned, stating: "We, the undersigned jurors, find the issues for the plaintiffs on both the plaintiffs' petition and counterclaim and do assess their damages at $200.00." At this time plaintiffs' counsel said: "Your Honor, may I see you in Chambers with the defendant, Mr. Rodick? He is here, but Mr. Barnes (defendants' counsel) is not here." After conferring in chambers and because of the absence of Mr. Barnes Judge Strother recessed the jury until 2:00 p. m. with an admonition not to discuss the case further among themselves "until you go back into the jury room."

At 2:00 p. m. Mr. Barnes appeared. In the Court's Chambers and out of the hearing of the jury plaintiffs' counsel said: "Plaintiffs request that the jury be informed by the Court that this verdict is improper in amount under the instructions; and request the jury to retire to deliberate, retire to the jury room to deliberate further and to consider the instructions and the evidence

in this case." Defendants' counsel opposed this request and considerable discussion ensued between counsel, all out of the hearing of the jury. When the discussion ended, Judge Strother entered the court room and from the bench said:

"I would suggest to the jury that they retire to the jury room again and your verdict, if you can agree upon a verdict, should be in accordance with the evidence you have heard and the instructions of the Court. As I say, you will have to take into consideration all of the evidence you have heard and the instructions of the Court together in arriving at your verdict, and render your verdict accordingly. I will suggest that you retire to your jury room for further deliberation.

"A Juror: I have been appointed foreman of the jury.

"The Court: Yes, sir.

"A Juror: And it seems like we can't come to an agreement whether we have to decide one way or the other. There are counterclaims in there. Can we vote on counterclaims or do we have to decide one way or the other?

"The Court: I think I can't give you anything definite as to how you shall arrive at your verdict, but I think if you will, as I suggested, take into consideration the evidence you have heard and follow the instructions of the Court, if you can agree upon a verdict, then the instructions and information as to how to render a verdict.

"Mr. Barnes: I think what is troubling him—

"Mr. Eager: Just a minute. I object to your replying to the question of the juror, Mr. Barnes.

"Mr. Barnes: I can answer this question.

"Mr. Eager: He is not asking you, if you please, sir. The Court is answering him.

"The Court: That is about as far as I can go with my suggestions. If you will read your instructions carefully and consider your evidence I think you can arrive at

a verdict and know how to write your verdict."

At 2:15 p. m. the jury retired to return ten minutes later with the following nine-man verdict: "We, the undersigned jurors, find the issues for the plaintiffs on both the plaintiffs' petition and counterclaim and do assess their damages at $1550.00 the principal amount with no interest allowed." Judgment was accordingly entered and in due time defendants filed their motion for a new trial. This motion was sustained by Judge Cook on the ground that "the Court erred in refusing to accept the first verdict by the jury and that (the) second verdict was coerced." As we have stated, plaintiffs appealed.

■ We have jurisdiction although the sums claimed in the petition and in the counterclaim total $8,722.14. This is not a case where plaintiffs' claim and defendants' counterclaims can co-exist in law. Therefore, the amount awarded plaintiffs ($1,550) is the "amount in dispute," for the purpose of conferring appellate jurisdiction. Jameson v. Fox, Mo., 260 S.W.2d 507.

Plaintiffs' first contention is that the trial court erred "in holding that it should have accepted the first verdict because the $200 verdict was not responsive in amount to the admitted issues and was therefore invalid as a matter of law."

■ Plaintiffs sought a recovery only for their $1,550 down payment. As was recently held in Kalberg v. Gilpin Co., Mo.App., 279 S.W.2d 177, 181, such measure of damages is a well-accepted basis of compensation to a purchaser upon a seller's default. And since the answer, the chattel mortgage attached thereto, and Instruction No. VII given on behalf of defendants, all admit that this down payment was made as plaintiffs claim, any verdict in favor of the Smiths must have been for at least $1,550.

■ It cannot be doubted that a jury verdict must be fully consistent with the pleadings, the instructions and the theory of submission in order to constitute a lawful verdict. Among Missouri decisions to

this effect, is Weisels-Gerhardt Real Estate Co. v. Pemberton Investment Co., 150 Mo. App. 626, 131 S.W. 353, where a verdict was returned for exactly 50% of the only amount authorized in plaintiff's verdict-directing instruction and the defendant had denied all liability. There the court said, 131 S.W. loc. cit. 354:

"* * * in actions on contract in which the plaintiff is entitled to recover his full claim or nothing whatever and the jury awards a lesser amount, the verdict will be deemed to show that in determining the case the jury either wholly disregarded the evidence, misapprehended its effect, or overlooked some important fact, or necessarily found some fact in favor of defendant which is wholly inconsistent with the verdict for any amount in favor of the plaintiff, and it should therefore be set aside even on the motion of defendant. * * *. The reasoning seems to be sound in logic in those cases where the sole issue is as to whether or not there is a contract between the parties and, if so, stipulating a certain amount, which plaintiff is entitled to recover, if at all. * * *"

In Bigham v. Schneider, Mo.App., 157 S.W.2d 547, a real estate agent sought recovery of the usual 5% commission on the sale of property which was admittedly worth $6,000. Defendant denied that he had hired plaintiff yet for reasons known only to themselves the jury returned a plaintiff's verdict for only $175. Judgment was reversed in an opinion by this court which held that since the amount of the verdict was inconsistent with the contested issues it was a nullity.

This court in Lanowah Inv. Co. v. John Hancock Mut. Life Ins. Co., 236 Mo.App. 1062, 162 S.W.2d 307, similarly reversed a life insurance agent's recovery of a policy commission in an amount which could not be justified by the evidence or by the instructions. Menefee v. Diggs, 186 Mo.App. 659, 172 S.W. 427, was a real estate agent's suit for $252 commission which resulted in a jury's verdict of $126. In reversing, it was said, 172 S.W. loc. cit. 429: "* * * a verdict for less than the specified sum will be set aside on appeal as not responsive to the issues."

In Cap-Keystone Printing Co. v. Tallman Co., Mo.App., 180 S.W.2d 802, another verdict for less than the full amount sought on an express contract was held to be no verdict at all, the court holding, 180 S.W.2d loc. cit. 805:

"It is obvious that a judgment entered upon a verdict given in such utter disregard of the evidence and the instructions of the court cannot be permitted to stand."

This invalidity is emphasized by the Supreme Court's en banc opinion in Blodgett v. Koenig, 314 Mo. 262, 284 S.W. 505, where plaintiff attorney sued for a $14,000 unpaid fee but defendant denied that he had ever engaged him. Although there necessarily was no issue at all upon the value of the services, the jury found for plaintiff for just $7,000 with interest, and defendant appealed. In holding that the defendant could not complain of a verdict which was more favorable to him than he had any right to expect, the court says, 284 S.W. loc. cit. 507:

"The plaintiff might have moved for judgment non obstante for the full contract price, but having elected to accept the verdict of the jury, how has the defendant been injured, when he is let off with less than the amount contracted for * * *?"

It follows from what we have said above that the first verdict for $200 was entirely unresponsive to the issues, could not support a valid judgment, and thus was properly rejected by Judge Strother.

Plaintiffs' second point is that "Judge Cook's ruling that the second verdict was coerced is without any support in the record * * *."

We have set out above the remarks of Judge Strother to the jury. As is to be seen, all that he did was to tell the jurors to take into consideration the evidence they had heard and to follow the instructions of the Court.

In the case of Lindstrom v. Kansas City So. Ry. Co., 202 Mo.App. 399, 218 S.W. 936, 937, in regard to a plaintiff's verdict for punitive damages only with no compensatory damages, this court said: "The court, before receiving and recording the verdict, should have sent the jury back, with instructions to return a proper verdict * *."

In the case of Cable v. Metropolitan Life Ins. Co., 233 Mo.App. 1093, 128 S.W.2d 1123, 1127, the insured obtained a judgment for only one month's disability benefits when plaintiff, if entitled to recover at all, was entitled to recover seven months' disability. In denying the defendant's claim of error on appeal, this court again held: "If the defendant had called the attention of the trial judge to any infirmity in the verdict at the time the verdict was returned, as it had right to do (Jordan v. St. Joseph Ry. Light, Heat & Power Co., 335 Mo. 319, 73 S.W. 2d 205), he could have returned the jury to its room to further consider the verdict. Keyes v. Chicago B. & Q. R. Co., 326 Mo. 236, 31 S.W.2d 50."

The case of Conway v. Kansas City Public Serv. Co., 234 Mo.App. 596, 125 S.W.2d 935, involved a situation where three separate "informal" verdicts were rejected by the trial court before a responsive one was finally returned by the jury. And this court held that neither the oral statements of the court to the jury, nor the refusal to receive the several verdicts constituted reversible error.

Among other cases in point are Ver Steeg v. Becker-Moore Paint Co., 106 Mo.App. 257, 286, 287, 80 S.W. 346, and Vromania Apartments Co. v. Goodman, 145 Mo.App. 653, 660, 123 S.W. 543.

 It is clear that plaintiffs' second contention is also well taken. Judge Cook could not have based his decision that the last verdict was coerced upon any personal observation since he was not present at the times in question. The allegations of coercion appearing in defendants' motion for new trial did not prove themselves. Mickel v. Thompson, 348 Mo. 991, 156 S.W.2d 721. The only evidence defendants offered in support of this motion was the affidavit of juror Patience. This affidavit sought to impeach the verdict and thus was wholly incompetent. Chrum v. St. Louis Public Serv. Co., Mo., 242 S.W.2d 54, 56.

The judgment is reversed and the cause remanded with directions to the trial court to reinstate the verdict for $1,550 in favor of the plaintiffs, and to enter judgment thereon, as of the date of the verdict.

All concur.